**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **GLORIA MARIE GREEN,** | : |
| | : |
| **Plaintiff** | **CIVIL ACTION NO. 3:12-1575** |
| | : |
| **v.** | |
| | :    **(JUDGE MANNION)** |
| **CAROLYN COLVIN,**[1] | |
| **Acting Commissioner of the** | : |
| **Social Security Administration** | |
| | : |
| **Defendant** | : |

**M E M O R A N D U M**

The record in this action, (Doc. No. 9), has been reviewed pursuant to 42 U.S.C. §405(g) to determine whether there is substantial evidence to support the Commissioner's decision denying the plaintiff's claim for Disability Insurance Benefits ("DIB") under the Social Security Act, ("Act"). 42 U.S.C. §§401-433, 1381-1383f.

**I.    PROCEDURAL BACKGROUND**

Plaintiff Gloria Marie Green protectively applied to the Social Security Administration for DIB under the Act on April 7, 2010. The Administration denied plaintiff's claim on September 8, 2010, finding that plaintiff was not

---

[1]On February 14, 2013, Carolyn Colvin became acting Commissioner of the Social Security Administration. Pursuant to Fed.R.Civ.P. 25(d), she has been substituted as the defendant.

disabled. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on July 14, 2011 in Harrisburg, Pennsylvania. (Tr. 27-89). Plaintiff was represented by counsel. (Tr. 27). In addition to the plaintiff's testimony, (Tr. 33 - 75), the ALJ heard testimony from a vocational expert ("VE"). (Tr. 75-88). On August 16, 2011, the ALJ found that plaintiff was not disabled within the meaning of the Act. (Tr. 10-25).

Plaintiff requested review of the ALJ's decision. (Tr. 6-9). On June 15, 2012, the Appeals Council denied the request for review. (Tr. 1-3).[2] Thus, the ALJ's decision became the final decision of the Commissioner. 42 U.S.C. §405(g). Plaintiff filed the instant appeal of the Commissioner's decision on August 17, 2012. (Doc. No. 1). The parties have filed briefs in support of their respective positions. (Doc. Nos. 10, 13, 14).

## II.   STANDARD OF REVIEW

When reviewing the denial of disability benefits, the court must determine whether the denial is supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Johnson v. Commissioner of

---

[2]The record submitted to this docket contains some new information that was submitted to the Appeals Council, but that was not before the ALJ at the July 2011 hearing. (Tr. 585-600).The court can therefore not consider that information in deciding this appeal. "Although evidence considered by the Appeals Council is part of the administrative record on appeal, it cannot be considered by the District Court in making its substantial evidence review..." Chandler v. Comm. of Social Sec., 667 F.3d 356, 360 (3d Cir. 2001)(*quoting* Matthews v. Apfel, 239 F.3d 589, 593 (3d Cir. 2001)).

Social Sec., 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552 (1988); Hartranft v. Apfel, 181 F.3d 358, 360. (3d Cir. 1999), Johnson, 529 F.3d at 200. It is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971).

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if her physical or mental impairment or impairments are of such severity that she is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §423(d)(2)(A).

### III.  DISABILITY DETERMINATION PROCESS

A five-step process is required to determine if an applicant is disabled

under the Act. The Commissioner must sequentially determine: (1) whether the applicant is engaged in substantial gainful activity; (2) whether the applicant has a severe impairment; (3) whether the applicant's impairment meets or equals a listed impairment; (4) whether the applicant's impairment prevents the applicant from doing past relevant work, and; (5) whether the applicant's impairment prevents the applicant from doing any other work. 20 C.F.R. §§404.1520, 416.920.

Here, the ALJ determined that claimant has severe impairments, but retains the residual functional capacity ("RFC") to perform a full range of work, with certain nonexertional limitations, and that therefore she is not disabled under 20 C.F.R. §404.1520(g). (Tr. 15-20).

## IV.   THE ALJ'S DECISION

Using the above-outlined procedure, the ALJ found that plaintiff met the insured status requirements of the Act through December 31, 2012, and that plaintiff had not engaged in substantial gainful activity since January 1, 2010, the alleged onset date. The ALJ found that plaintiff has severe impairments consisting of depressive disorder with psychotic features, post-traumatic stress disorder, substance abuse, panic disorder, attention deficit hyperactivity disorder, and obesity, but that plaintiff did not have an impairment or combination of impairments which met or medically equaled the severity of the listed impairments of 20 C.F.R. Part 404, Subpart B, Appendix 1. The ALJ

found that the plaintiff had the RFC to perform a full range of work at all exertional levels, with the nonexertional limitations that the work be unskilled, consist of simple, routine, repetitive tasks with only occasional changes in work setting, involve only occasional interaction with supervisors, and involve no interaction with co-workers or the public. The ALJ also determined that plaintiff has no past relevant work experience, and that she was born on January 27, 1977 and was thirty-two years old at the time of the alleged disability onset date, making her a "younger individual" under 20 C.F.R. §404.1563. The ALJ additionally found that plaintiff has a high school education and can communicate in English, that transferability of her job skills is not an issue because she does not have past relevant work experience, that jobs which she can perform exist in significant numbers in the national economy, and that she was not disabled as defined by the Act from January 1, 2010 through the date of the ALJ's decision. (Tr. 15-20).

## V.    EVIDENCE OF RECORD

The plaintiff has alleged disability since January 1, 2010. The evidence of record establishes that plaintiff was thirty-two years old at the time of the alleged disability onset. She has obtained a high school diploma.[3] She has a

---

[3]Plaintiff testified that she obtained this diploma online, but that it was not a general equivalency diploma ("GED"), (Tr. 40-41), while her attorney references it as a GED. (Tr. 26). The degree was obtained via online course work, and was completed in 2009, when plaintiff was approximately thirty-one.

history of sexual abuse, and suffered a stillbirth in 2004, which have resulted in a history of depression and anger. (Tr. 491). The medical evidence of record shows that plaintiff first sought treatment for depression on January 6, 2010. (Tr. 482). She began seeing a therapist, Jennifer Rhodes, LSW, MSW, in January 2010. (Tr. 324). A therapy progress report from May 18, 2010 indicates that plaintiff had severe depressive disorder with psychotic features, generalized anxiety disorder, severe relational problems, and problems with social environment. (Id.). Plaintiff appeared cooperative at the May 18 meeting, although anxious, angry, illogical, paranoid, and suffering from hallucinations. (Id.). It was noted that she becomes physically and verbally aggressive with family members and neighbors. (Id.). Plaintiff received a Global Assessment of Functioning[4] ("GAF") score of 48. (Id.). Rhodes recommended a psychiatric

---

[4]A GAF score, or a Global Assessment Functioning scale, takes into consideration psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness and is not supposed to include the consideration of impairment in functioning due to physical (or environmental) limitations. The scale ranges from the highest score of 100 to the lowest score of 1. A GAF of 21-30 indicates behavior considerably influenced by delusions or hallucinations *or* serious impairment in communication or judgment (e.g. sometimes incoherent, acts grossly inappropriately, suicidal preoccupation), *or* inability to function in almost all areas. A GAF of 31-40 indicates some impairment in reality testing or communication, *or* major impairment in several areas, such as work or school family relations, judgment, thinking, or mood. A GAF score between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed. text revision 2000).

evaluation to determine the proper medication for plaintiff's condition, and noted that plaintiff would continue therapy. (Id.). The May progress report is the only one in the record.

On August 18, 2010, plaintiff underwent a disability determination with Dr. Edward Yelinek. (Tr. 326-329). Dr. Yelinek's evaluation reports that plaintiff hallucinates the sounds of a baby crying, although she no longer suffers from command hallucinations and hallucinations of distinct voices, which she previously had for several years. (Tr. 326). Plaintiff reported hitting the woman who had provided her transportation to her last job because "something told me to hit her." (Tr. 327). Plaintiff reported spending most of her time in her room, and doing chores. (Id.). She reported receiving cash assistance, food stamps, and a medical card. (Id.). Plaintiff reported seeing a psychiatrist, and a counselor. (Id.). Dr. Yelinek found plaintiff to be alert and oriented during the evaluation, and appropriately dressed and groomed. (Id.). He found her mood to be severely depressed, and she cried throughout the evaluation, presenting as afraid and angry. (Id.). Dr. Yelinek found her to be socially withdrawn and unable to do basic arithmetic calculations, and her perceptions distorted. (Tr. 327-28). Dr. Yelinek found her social judgment to be extremely poor. (Id.). Dr. Yelinek concluded that plaintiff's prognosis for near term improvement was "rather poor." (Tr. 329). He determined that she has severe major depressive disorder with psychosis, and evaluated her GAF at 40. (Tr. 328-29).

Plaintiff was admitted to The Meadows Psychiatric Center on August 30,

2010 for a seven-day inpatient treatment. (Tr. 361-365). Dr. Frank Hamlett interviewed plaintiff and reviewed her records. (Tr. 361). Dr. Hamlett noted that patient had daily crying spells, thoughts of suicide, and insomnia. (Id.). Plaintiff reported nightmares and flashbacks of her past sexual abuse, and hallucinations of a baby crying. (Id.). Dr. Hamlett noted that plaintiff was cooperative and engaged during the interview. (Tr. 362). She was tearful and crying, and described her mood as depressed. (Id.). Dr. Hamlett found her capacity for activities of daily living good. (Tr. 363). She was given a GAF of 30 when she was admitted, and a 50 when she was discharged. (Tr. 365). It was also noted that 50 was her highest GAF for the last year. (Id.). Plaintiff was given a treatment plan at the time of her discharge from the Meadows, and prescribed Celexa, and Ambien for help in sleeping. (Tr. 364). She was recommended for follow-up psychiatric treatments and therapy. (Id.). Her condition was marked as "improved" upon discharge. (Id.).

Plaintiff followed up treatment at Tri-State Community Health Center on September 8, 2010. She noted feeling some anxiety, and sadness, and noted that "life in general" and the death of her infant in 2004 continued to be stressors for her. (Tr. 463). She continued to lack energy and concentration. (Id.). At another follow-up on September 23, 2010, plaintiff was anxious, reported insomnia, and felt angry, but didn't know why. (Tr. 461). She was referred for anger management. (Id.).

On November 1, 2010, plaintiff underwent a psychiatric evaluation by Dr.

8

Harvey Shapiro. (Tr. 491-493). Dr. Shapiro noted that plaintiff's history of sexual abuse has caused a long history of depression, and that the stillbirth of her child in 2004 also results in continuing depression and anger. (Tr. 491). He noted that plaintiff "probably has ADD with poor attention and easy distractability." (Id.). He also noted that plaintiff can be very irritable, occasionally punching walls, and that she was socially withdrawn and anxious. (Tr. 492). He described her as distressed and markedly depressed, with a sad affect, but cooperative. (Id.). Dr. Shapiro recommended stronger antidepressants, Effexor for panic attacks, and an ADHD medication, and continued therapy. (Tr. 493). He assessed plaintiff's GAF as a 50. (Id.).

On April 15, 2010, plaintiff initiated services at Peerstar, LLC, with the goals of dealing with her depression over the loss of her child and her anger issues. (Tr. 577). Plaintiff met regularly with peer specialist Wanda Williams from April 2010 through March 2011. (Tr. 503-77). Ms. Williams attempted to help plaintiff achieve a driver's license and improve her coping skills and other goals. (Id.). Plaintiff passed her driver's license test on October 28, 2010. (Tr. 529). The meeting minutes recorded by Ms. Williams reflect that at times plaintiff was depressed, sad, and angry, and on other days felt better. (Tr. 503-577).

On September 2, 2010, John Gavarri, Psy.D., ABPP conducted a mental RFC assessment of plaintiff after reviewing the evidence on the record. (Tr. 333-336). His evaluation opines that plaintiff's claims of hallucinations were

9

relatively new and did not comport with research related to hallucinatory phenomena, making their credibility low. (Tr.335). He determined that plaintiff manages her hygiene, prepares simple meals, completes routine chores, shops, and pays bills. (Id.). Dr. Gavarri determined that plaintiff struggles with social skills, but that despite her impairments, the medical evidence showed that she can do many jobs which do not require complicated tasks. (Tr. 335-36). In making his RFC assessment, Dr. Gavarri gave little weight to the assessment of Dr. Yelinek, concluding that Dr. Yelinek's opinion was not consistent with other evidence in the record. (Id.).

Plaintiff's testimony at the hearing reflected that she spends a great deal of time in her bedroom on most days, but that she goes for walks with a neighbor approximately every other day, cooks simple meals, and cleans her apartment. (Tr. 42, 44, 63). She has punched holes in her apartment wall in anger. (Tr. 47-51). She sometimes cares for her young godson and his siblings, and sometimes watches neighborhood children, or plays with them outside. (Tr. 52, 63-67). She reported meeting with Ms. Williams approximately twice a week, and attending periodic therapy and other medical appointments. (Tr. 63). She testified to feelings of anger, and to suicidal and homicidal thoughts. (Tr. 38, 71). Plaintiff cried throughout the hearing, and testified to daily crying spells. (Tr. 71). She testified that medicine has helped with her anxiety attacks. (Id.). She testified that Ms. Williams sometimes needs to remind her to clean her apartment. (Tr. 74). Plaintiff testified that she has at times become aggressive

with people in her neighborhood. (Tr. 73-74).

The VE's testimony at the hearing was that plaintiff would be able to function as a cleaner or agricultural produce sorter, assuming that she was limited to unskilled work consisting of simple, repetitive tasks with only occasional changes in workplace setting, interaction with supervisors, and with no interaction with coworkers or the public. (Tr. 80-82). The VE testified that if an individual were consistently receiving GAF scores of 50 or below, that he would not initiate a job search for that person. (Tr. 82).

## VI.  DISCUSSION

Plaintiff argues that the ALJ erred at step 3 of the disability determination process because plaintiff's social and mental impairments clearly meet the regulatory 12.04A or 12.04B requirements for disability. Plaintiff next argues that the ALJ's decision was not based on substantial evidence because the ALJ disregarded evidence without explanation, and did not analyze plaintiff's GAF scores or the VE's testimony contradicting the findings of the RFC. Plaintiff finally contends that the ALJ improperly ignored opinions from treating and non-treating sources and gave improper weight to the opinion of a non-examining source through a misapplication of relevant factors.

Plaintiff argues that the ALJ erred in step 3 of the disability determination by finding that plaintiff does not have an impairment or combination of impairments that meets or medically equals the listings 12.04A and 12.04B in

11

20 C.F.R. Part 404, Subpart P, Appendix 1. Plaintiff contends that the objective medical evidence of the record establishes that plaintiff meets the requirements of listings in 12.04A and 12.04B.

A claimant bears the burden of establishing that his or her impairment meets or equals a listed impairment. Young v. Comm. of Social Sec., 322 F.App'x 189,190 (3d Cir. 2009)(*citing* Poulos v. Comm. of Social Sec., 474 F.3d 88, 91 (3d Cir. 2007)). To match a listed impairment under the regulations, a claimant's impairment must satisfy all of the criteria for the listing. 20 C.F.R. §404.1525(c)(3). If the claimant's impairment matches or equals a listed impairment, then she is disabled, and no further analysis is necessary. Cunningham v. Comm. of Social Sec., 507 F.App'x 111, 115 (3d Cir. 2012)(*citing* Brewster v. Heckler, 786 F.2d 581, 584-84 (3d Cir. 1986)). The court considers symptoms, the extent to which those symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of the record. 20 C.F.R. §404.1529.The ALJ need not use particular language or a particular format at step 3, as long as the decision permits meaningful judicial review. Ortega v. Comm. of Social Sec., 232 F.App'x 194, 197 (3d Cir. 2007)(citations omitted).

The ALJ concluded that plaintiff suffers from severe depressive disorder with psychotic features, post-traumatic stress disorder, substance abuse, panic disorder, attention deficit hyperactivity disorder, and obesity. (Tr. 15). The ALJ considered these disorders under 20 C.F.R. Part 404, Subpart P, App. 1 listings

12

12.02, 12.04, 12.06, and 12.09. (Id.). The ALJ noted that she considered whether the "paragraph B" and "paragraph C" criteria for these disorders were met by plaintiff, apparently conceding that the "paragraph A" criteria were met. Plaintiff contends that she meets the "paragraph B" criteria.

"Paragraph B" criteria demand that the disorder in question results in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace, or; repeated episodes of decompensation, each of extended duration. (Tr. 16). Plaintiff argues that she meets the "B" criteria because she has marked difficulty in maintaining social functioning and maintaining concentration, persistence, and pace.

The ALJ did find that plaintiff had difficulties with social functioning and concentration, but found these to be moderate, rather than marked. Limitation in social functioning is determined by the plaintiff's "capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals." 20 C.F.R. Part 404, Subpart P, App. 1, 12.00C(2). The limitation is "marked" based on the nature and overall degree of interference with function. Id. Here, the ALJ considered the evidence, and noted that while plaintiff has had difficulty with relationships with co-workers and supervisors, and has difficulty getting along with people, she does maintain contacts with friends in her neighborhood, and was able to be cooperative with her mental health professionals. (Tr. 16).

13

However, some critical evidence was not discussed at this step. It was not noted that plaintiff has punched holes in her walls on three separate occasions, and that she becomes aggressive and angry with people in her neighborhood. Her problems with family and social relations were categorized as "severe" by Jennifer Rhodes. The ALJ also did not note that plaintiff testified to daily crying spells, or that plaintiff cried throughout the hearing before the ALJ. Moreover, medical records and plaintiff's testimony reflecting that she has thoughts of suicide, homicide, and otherwise hurting others were not mentioned in the ALJ's step 3 analysis. Also not considered were the peer counseling notes of Ms. Williams, which, although they show that plaintiff has good and bad days, reflect that plaintiff has consistent and unresolved anxiety and anger, causing difficulty in dealing with other people appropriately, if at all. The evidence of record supports that plaintiff has more than moderate difficulties in social functioning. Plaintiff's impairments in social functioning are marked.

The ALJ also found that plaintiff has moderate difficulties with concentration, persistence, or pace, which "refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. Part 404, Subpart P, App. 1, listing 12.00C(3). Here, the ALJ noted that plaintiff has problems paying attention, and is easily distracted, but also noted that plaintiff can follow written and spoken instructions, can play computer games, and that plaintiff maintained her attention and concentration throughout the

14

hearing before her. The ALJ also noted that plaintiff watched children for a week or more at a time. However, the ALJ's report does not include the fact that plaintiff cried throughout the hearing, as she does daily, a condition which would surely affect someone's ability to perform work tasks in a timely and appropriate fashion. Nor did the ALJ mention the medical evidence of Drs. Hamlett and Yelinek.

Dr. Hamlett noted that plaintiff's concentration was impaired, making her unable to spell simple words. He considered her judgment impaired. Dr. Yelinek found that plaintiff's stamina, attention, and concentration were "poor," and she was unable to complete simple addition and subtraction questions. She was unable to perform "serial 7s." *See* 20 C.F.R. Part 404, Subpart P, App. 1, listing 12.00C(3). He found her immediate memory "extremely poor." At times, she lacks the ability or motivation to clean her apartment and do household chores, and testified that she needs to be reminded by Ms. Williams or her landlady to maintain her home. Additionally, the ALJ did not address at step 3 that although plaintiff has technically obtained an online GED, she didn't do the work herself because she "couldn't understand it."

The ALJ also did not address the GAF scores plaintiff received, which ranged from 30 to 50. GAF scores do not have a "direct correlation to the severity requirements" under SSA rules. West v. Astrue, 2010 WL 1659712, at *4 (Apr. 26, 2010 E.D. Pa.)(*quoting* Watson v. Astrue, 2009 WL 678717, at *5 (Mar. 13, 2009 E.D. Pa))(*quoting* 66 Fed.Reg. 50746, 50765-65 (2000)).

15

However, "a GAF score constitutes medical evidence accepted and relied upon by a medical source and *must* be addressed by an ALJ in making a determination regarding a claimant's disability." Colon v. Barnhardt, 424 F.Supp. 2d 805, 812 (E.D Pa. 2006); Joseph v. Astrue, 2012 WL 4459796, at *8 (Apr. 26, 2012 E.D. Pa.)(GAF scores can impact whether a plaintiff meets listed impairments). GAF scores of 50 and below indicate serious or major impairments with functioning, including inability to maintain social functioning and inability to maintain employment. *See* Am. Psych. Assoc., Diagnostic & Statistical Manual of Mental Disorders 34 (2000). The VE even testified that he would not start a job search on someone with a GAF score consistently at 50 or below. All of this evidence points to difficulties in consistency, persistence, and pace that are more than moderate. The evidence of record demonstrates that plaintiff has a marked limitation in maintaining consistency, persistence, and pace.

The ALJ's step 3 decision discussed the different regulations she applied, the "B" and "C" criteria she considered, and a variety of evidence from the record. However, much of the evidence of record which demonstrates the severity of plaintiff's impairments seems to have been disregarded at this step, and the ALJ did not explain how or whether she discounted that evidence at step 3. Accordingly, the court is not satisfied that substantial evidence supports the ALJ's determination that plaintiff's impairments do not meet the requirements of 20 C.F.R. Part 404, Subpart P, App. 1 listings 12.02B, 12.04B,

12.06B, and 12.09B. The court finds that plaintiff has marked limitations in social functioning and consistency, persistence, and pace. Therefore, her impairments meet the severity requirements of the regulations.

Finding that plaintiff's impairments meet the listings at step 3 "results in a finding of disability." Cruz v. Commission of Social Sec., 244 F.App'x 475, 480 (3d Cir. 2007)(citations omitted). Thus, the analysis ends at step 3, and the court will not consider plaintiff's other arguments for relief. Plaintiff's request for DIB is granted.

## VII.   CONCLUSION

Based on the foregoing, the plaintiff's appeal of the decision of the Commissioner of Social Security, (Doc. No. 1), is **GRANTED**, the decision of the Commissioner is **REVERSED**, and the Commissioner is directed to award plaintiff disability insurance benefits. A separate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: January 24, 2014**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2012 MEMORANDA\12-1575-01.wpd